UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

MARK HOFFMAN, on behalf of himself and all others similarly situated,

    Plaintiff,

vs.

REAGAN GOLD GROUP, LLC

    Defendant.

Case No. 24-cv-06003

**PLAINTIFF'S OPPOSITION TO**
**DEFENDANT'S MOTION TO SET ASIDE DEFAULT**

A default judgment or entry of default may be set aside for good cause if the moving party shows "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). However, the motion to set aside an entry of default may be denied if, "the defendant's culpable conduct led to the default." *In re Hammer,* 940 F.2d 524, 525-26 (9th Cir. 1991). The history of the Defendant Reagan Gold Group, LLC's conscious decision to not participate in this lawsuit is outlined below. Quite simply, it led to the default and now, more than 2 months after they had an attorney appear in the lawsuit they have only decided to file a motion to set aside the default the *day after* they were Ordered to participate in discovery (i.e. when the scope of their calling conduct to numbers on the National Do Not Call Registry could finally come to light). The Defendant's strategic default strategy should not be rewarded, and their motion to set aside the default should be denied.

While this Court is aware of the procedural history of this case, the Plaintiff will briefly recount it below:

1. Plaintiff filed his Class Action Complaint on December 5, 2024, alleging Defendant willfully violated the (1) Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, and the implementing regulations, 47 C.F.R. § 64.1200 *et seq.*, and (2) the Washington's Consumer Electronic Mail Act ("CEMA") and Consumer Protection Act, RCW 19.190.060 and RCW 19.86, by initiating advertising and telemarketing solicitations to Plaintiff and the putative Class, although their residential telephone numbers were on the National Do Not Call Registry. ECF No. 1, ¶¶ 15-35.

2. Defendant was served on December 10, 2024, making its responsive pleading due on December 31, 2024. ECF No. 4.

3. Indeed, Regan Gold Group sent an e-mail to counsel for the Plaintiff on December 10, 2024, stating:

> My name is Mary Boston and I oversee marketing efforts for Reagan Gold Group… We reviewed Mr. Hoffman's record and determined that contact attempts were made in error, as his status on the Do Not Call (DNC) list should have prevented them. This oversight was on our part, and we sincerely apologize for the inconvenience it caused Mr. Hoffman.

*See* Exhibit 1.

4. Critically, Reagan Gold Group made their intention to not participate in the Court's process clear as Ms. Boston stated, "we don't have a company attorney ***and don't intend on going to court.***"

5. Defendant executed on their threat and did not file a responsive pleading by the deadline or otherwise.

6. However, Regan Gold Group hired several attorneys to attempt to try to pay Mr. Hoffman off and have him not pursue the rights of other putative class members who got the same calls.

7. First, on January 7, 2025, Regan Gold Group retained Foster Garvey PC, who informed counsel for the Plaintiff that they had been retained to try to resolve the case individually but that they did not intend to appear. *See* Exhibit 2.

8. Next was the law firm of Carlson & Messer LLP in Los Angeles that made a similar statement and request on January 9, 2025. *See* Exhibit 3.

9. Again, Regan Gold Group was willing to pay lawyers to try to resolve the case but repeatedly indicated its lack of intent on actually defending it.

10. Accordingly, Plaintiff filed a Motion for Default Against Defendant on January 30, 2025, which was entered on January 31, 2025. ECF. Nos. 5-6.

11. Counsel for Plaintiff has been in contact with Defendant and its counsel since default. On February 19, 2025, counsel for Defendant responded and requested a copy of the default order entered against Defendant. Plaintiff sent the order the next day. After receiving the order, counsel has suggested they would appear and respond after investigating the matter.

12. On February 28, 2025, Defendant's counsel filed a notice of appearance. ECF. No. 7.

13. However, it was not until the *day after* the Court entered an Order permitting discovery into the other calls to numbers on the National Do Not Call Registry that the Defendant made that the Defendant finally filed a motion to set aside the default.

14. The discretion to set aside an entry of default is "especially broad." *Mendoza v. Wight Vineyard Management,* 783 F.2d 941, 945 (9th Cir. 1986). This Court should utilize that discretion to not permit the Defendant to strategically appear when it would like.

15. A default judgment, and lack of participation in this matter, was a strategic decision. In a TCPA class action lawsuit, a defendant's call records and data are the key

evidence necessary to determine whether a plaintiff can satisfy the requirement for class certification under Rule 23. *See Starling v. KeyCity Capital, LLC*, No. 3:21-cv-818-S, 2022 U.S. Dist. LEXIS 11438 at *10 (N.D. Tex. Jan. 21, 2022) ("District courts . . . routinely permit precertification discovery of call lists and call data in TCPA class actions."); *Warren v. Credit Pros Intl Corp.*, No. 3:20-cv-763-TJC-MCR, 2021 U.S. Dist. LEXIS 79150, 2021 WL 3552254, at *8 (M.D. Fla. Apr. 26, 2021) ("Plaintiff is also entitled to receive—prior to class certification—the documents and information related to the call logs, transmission summaries, outbound call lists, and the information contained therein bearing on Defendant's communications with the putative class members"); *Johnson v. Moss Bros. Auto Group, Inc.*, No. 5:19-cv-2456-FMO-SP, 2020 U.S. Dist. LEXIS 167728, 2020 WL 6565315, at *7 (C.D. Cal. Sept. 14, 2020) (holding plaintiff in putative TCPA class action 'entitled to some class-wide discovery' at precertification stage and finding call logs, dial lists, and other documents concerning prerecorded messages relevant to issues of numerosity and commonality); *Medina v. Enhanced Recovery Co., LLC*, No. 2:15-cv-14342, 2017 U.S. Dist. LEXIS 186651, 2017 WL 5196093, at *3 (S.D. Fla. Nov. 9, 2017) ("Outbound call lists are relevant in TCPA class actions to establish the numerosity and commonality requirements for class certification under Rule 23, as well as to prove the merits of Plaintiffs' claims."); *Doherty v. Comenity Capital Bank,* No. 3:16-cv-1321-H-BGS, 2017 U.S. Dist. LEXIS 70873, 2017 WL 1885677, at *4 (S.D. Cal. May 9, 2017) (finding "outbound dial lists are relevant to establish the issues of numerosity and commonality under Federal Rule of Civil Procedure 23(a) and are therefore discoverable.").

16. Indeed, it is no coincidence that the Defendant waited until the day after they had to participate in discovery to actually file this motion. That gamesmanship should not be

rewarded. "[A] defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 697 (9th Cir. 2001) (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1392 (9th Cir. 1988)).

17. There's no dispute that the Defendant had actual notice of the lawsuit and they quite literally stated that they "**don't intend on going to court.**" See ECF No. 16-1.

18. Other federal courts have arrived at the same conclusion in similar situations. *See e.g. Jones v. James Trading Co.,* 2021 U.S. Dist. LEXIS 190347, *7-8 (C.D. Cal. 2021) (denying motion to set aside default for decision to not defend the action).

19. To be clear, Mr. Hoffman strictly denies providing his consent for the calls at issue and pleads as much in his complaint and this position now taken by Regan Gold (which has not been supported by any documentation) is in direct contrast to their prior position that "contact attempts were made in error, as his status on the Do Not Call (DNC) list should have prevented them".  However, this analysis is not needed because "Defendants' own evidence demonstrates that they have willfully failed to defend this action, the Court need not address any of the remaining factors." *Id.*

20. Critically, Reagan Gold Group's position that it thought the litigation was on hold, and that it is "unfamiliar with the legal process" is undermined by the fact it has been sued under the TCPA before, just recently. See Exhibit 1.

21. There, it retained attorneys, filed a motion to dismiss, and was not defaulted. *Id.*

22. Indeed, counsel for the Defendant in that case Mark Banner and Aaron Tift appeared for Reagan Gold Group on November 12, 2024, just about one month before Reagan Gold Group was served with this lawsuit.

## CONCLUSION

WHEREFORE, for the reasons set forth herein, the Plaintiff respectfully requests that the motion should be denied.

DATED this 1st day of May, 2025.

By: */s/ Anthony I. Paronich*
Anthony I. Paronich, *pro hac vice*
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

Samuel J. Strauss, WSBA #46971
Email: sam@turkestrauss.com
613 Williamson St., Suite 201
Madison, Wisconsin 53703
Telephone: (608) 237-1775
Facsimile: (608) 509-4423

*Attorneys for Plaintiff*