UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARK HOFFMAN, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>REAGAN GOLD GROUP, LLC<br><br>Defendant. | Case No. 3:24-cv-6003 TMC<br><br>**DEFENDANT'S RESPONSE TO PLAINTIFF'S OPPOSITION TO MOTION TO SET ASIDE DEFAULT** |

**I. Introduction**

Reagan Gold Group, LLC ("Reagan") respectfully submits this reply to the Plaintiff's Opposition to the Motion to Set Aside Default. Reagan asserts that the Default was not the result of culpable conduct but rather excusable neglect, and that it has meritorious defenses to the claims asserted by the Plaintiffs. Furthermore, the Plaintiffs' reliance on inadmissible settlement discussions under Rule 408 of the Federal Rules of Evidence should be disregarded.

The procedural history of this matter indicates that Reagan was served with the complaint on December 10, 2024, and made efforts to address the issue promptly. Reagan engaged in settlement discussions and sought legal counsel to resolve the matter. The delay in filing the Motion to Set Aside Default was not due to any strategic decision but rather the time required to investigate the matter and prepare a good faith motion. Accordingly, Reagan requests that the Court grant its Motion to Set Aside Default, allowing the case to be litigated on its merits without prejudice to the Plaintiff.

DEFENDANT'S RESPONSE TO PLAINTIFF'S OPPOSITION TO MOTION TO SET ASIDE DEFAULT - 1

## II. Meritorious Defense

1. Reagan has a meritorious defense based on the belief that electronic consent was obtained for the contact with the Plaintiffs. The lead was provided by Data Alliance Group, which assured Reagan that the lead was compliant with TCPA regulations. Reagan relied on this assurance, believing that the necessary consent was in place. In addition, Reagan was aware of a Licensing Agreement that Data Alliance Group had for an NRA List. According to this agreement, once a party, such as Hoffman, provided **electronic consent** by responding affirmatively to a prompt, the party would receive a "TCPA approved auto response message."

2. Upon realizing the apparent oversight regarding Mr. Hoffman's status on the Do-Not-Call list, Reagan took immediate steps to rectify the situation. Mary Boston, overseeing marketing efforts, acknowledged the apparent error and expressed a sincere apology to Mr. Hoffman. In her attempt to rectify the problem, Mary Boston did not realize that Mr. Hoffman provided **electronic consent** to receive a TCPA approved message. Mary Boston was operating at the time under the misunderstanding that there was a 90-day window to contact people who have previously provided electronic consent. Mary Boston was mislead again by Mr. Munoz of Data Alliance Group.

3. The Ninth Circuit has held that a meritorious defense need only allege sufficient facts that, if true, would constitute a defense. Reagan's reliance on Data Alliance Group's assurances constitutes such a defense. *United States v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1094 (9th Cir. 2010).

## III. Excusable Neglect

1. The Plaintiffs' assertion that Reagan made a conscious decision not to respond to the complaint is a misinterpretation of the Defendant's actions. Nonetheless, even if taken from the position of Hoffman and the Class, that Reagan made a conscious decision not to respond to the complaint, it stands that their understanding on what being culpable means is ill-informed. The Ninth Circuit in *Mesle* clarified

that culpable conduct requires bad faith or an intention to manipulate the legal process. 615 F.3d at 1092. Additionally, "in this context the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process." *Id.*

2. Reagan is a small, family-run business with limited resources. Reagan acknowledges the delay in responding to the complaint and asserts that it did not intentionally disregard the court's processes but rather sought to mitigate legal costs by attempting to settle the matter amicably. Furthermore, this delay was a result of excusable neglect, as Reagan faced challenges in securing legal representation during the holiday season and was unfamiliar with the legal process. Reagan promptly sought legal counsel upon realizing the default and has since taken steps to rectify the situation.

3. Reagan's actions do not amount to culpable conduct, as there is no evidence of bad faith or an intention to manipulate the legal process. The company initially retained Tim J. Filer to negotiate a settlement, not understanding the significance of filing a motion to postpone the date. This misunderstanding was not an act of bad faith but rather a reflection of the company's unfamiliarity with legal processes. Reagan's efforts to settle the matter and secure legal representation demonstrate its commitment to participating in the legal process, defending the action on its merits, and were not intended to take advantage of the Plaintiffs or interfere with judicial decision-making.

### IV. Inadmissibility of Settlement Discussions

1. Plaintiffs' reliance on statements made by Mary Boston in settlement discussions is inadmissible under Rule 408 of the Federal Rules of Evidence. These statements were made in an attempt to settle the matter and should not be considered by the court. The Ninth Circuit has consistently held that settlement discussions are inadmissible to prove liability or the amount of a disputed claim.

DEFENDANT'S RESPONSE TO PLAINTIFF'S OPPOSITION TO MOTION TO SET ASIDE DEFAULT - 3

2. Reagan's actions, even if the Plaintiffs were to identify an exception to Rule 408, cannot substantiate the claim that Reagan did not attempt to participate in the legal proceedings. The plaintiffs themselves acknowledge that Reagan initially sought to settle with Mr. Hoffman through Ms. Boston. Subsequently, Regan engaged attorneys to negotiate a settlement on their behalf. This sequence of actions demonstrates Reagan's active participation in the legal process and further underscores the company's misunderstanding of the legal proceedings.

3. It is worth noting that attempts to settle are considered defending against an action. The Ninth Circuit has held that an "appearance" was found due to numerous communications and meetings between the parties. *Direct Mail Specialist, Inc. v. Eclat Computerized Technologies, Inc. Dba Computerized Technology*, 840 F.2d 685 (9th Cir. 1988) (citing *H. F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe*, 432 F.2d 689 (D. C. Cir. 1970)).

### V. Conclusion

For the reasons stated above, Reagan respectfully requests that the Court grant its Motion to Set Aside Default. Reagan has demonstrated good cause, including a meritorious defense and excusable neglect, and has acted in good faith to rectify the default. Allowing the case to proceed on its merits, as the litigation is in its early stages, will not prejudice the Plaintiff and will provide an opportunity for a fair resolution. Reagan is committed to addressing the claims and demonstrating its compliance with applicable laws.

RESPECTFULLY SUBMITTED AND DATED this 20th day of May 2025.

By: _/s/ David M. Rose_
David M. Rose, WSBA **#32849**

Email: dmr@pnwfamilylaw.com
216 South Palouse Street
Walla Walla, WA 99362
Telephone: (509) 572-3700
Fax: (509) 572-3701

*Attorney for Defendant*

DEFENDANT'S RESPONSE TO PLAINTIFF'S OPPOSITION TO MOTION TO SET ASIDE DEFAULT - 4