UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MARK HOFFMAN,<br><br>              Plaintiff,<br><br>   v.<br><br>REAGAN GOLD GROUP LLC,<br><br>              Defendant. | Case No. 3:24-cv-06003-TMC<br><br>ORDER GRANTING MOTION TO SET ASIDE DEFAULT |

## I. INTRODUCTION

On December 5, 2024, Plaintiff Mark Hoffman filed a class action suit against Defendant Reagan Gold Group LLC ("Reagan Gold"), alleging that Reagan Gold made telemarketing calls to his residential phone number in violation of the Telephone Consumer Protection Act ("TCPA") and Washington state laws. Dkt. 1. Plaintiff moved for default on January 30, 2025, Dkt. 5, and the Court entered an order of default the next day, Dkt. 6. Defendant's attorney made an appearance on February 28, 2025, Dkt. 7, but has not filed a responsive pleading.

On April 25, 2025, Defendant moved to set aside entry of default (Dkt. 12), asserting that the delay was not due to culpable conduct but instead excusable neglect, and that it has meritorious defenses to claims asserted in the complaint. Because the Court concludes that Defendant has established good cause to vacate the entry of default, the motion is GRANTED.

ORDER GRANTING MOTION TO SET ASIDE DEFAULT - 1

The entry of default is VACATED, and Defendant must file a responsive pleading no later than July 7, 2025.

## II. BACKGROUND

Plaintiff is a Washington resident whose phone number has been listed on the national do-not-call registry for more than five years prior to receiving calls from Reagan Gold. Dkt. 1 ¶¶ 20, 27. Plaintiff alleges that he has never been a customer of Reagan Gold but received thirty-five calls and text messages from Reagan Gold between June 20, 2023 and November 20, 2024. *Id.* ¶ 29. He received these communications through a phone number used for personal, residential, and household reasons. *Id.* ¶ 24. Plaintiff alleges that the text messages were sent to promote Reagan Gold's services for setting up a Gold IRA. *Id.* ¶ 31.

Plaintiff asserts that these telemarketing calls and text messages invaded his privacy in violation of the TCPA, the Washington Commercial Electronic Mail Act ("CEMA"), and the Washington Consumer Protection Act ("CPA"). *Id.* ¶ 34. Plaintiff also brings these claims on behalf of two different classes—the National Do Not Call ("DNC") Class and Washington CEMA Class. *Id.* ¶¶ 37, 45–55.

## III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 55(c), a court may set aside an entry of default for good cause. Fed. R. Civ. P. 55(c). To determine "good cause," the court must consider three factors: (1) "whether the party seeking to set aside the default engaged in culpable conduct that led to the default; (2) whether it had no meritorious defense; or (3) whether reopening the default judgment would prejudice the other party." *United States v. Aguilar*, 782 F.3d 1101, 1105 (9th Cir. 2015) (citation omitted). These factors, often called the "*Falk* factors," are guided by the policy concern that "judgment by default is a drastic step appropriate only in extreme

circumstances" and "a case should, whenever possible, be decided on the merits." *Falk v. Allen*, 739 F.2d 461, 463 (9th Cir. 1984) (citation omitted).

## IV.  DISCUSSION

**A.  Defendant has shown good cause to set aside default.**

*1.  Culpable Conduct*

The court begins with the first factor: "whether the party seeking to set aside the default engaged in culpable conduct that led to the default[.]" *Aguilar*, 782 F.3d at 1105. A "defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *United States v. Signed Pers. Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1092 (9th Cir. 2010) (citations omitted) (hereinafter "*Mesle*"). In this context, "the term 'intentionally' means that a movant cannot be treated as culpable simply for having made a conscious choice not to answer[.]" *Id.* Rather, "the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial [decision making], or otherwise manipulate the legal process." *Id.* (citation modified). The Ninth Circuit has "typically held that a defendant's conduct was culpable for purposes of the [good cause] factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond." *Id.* (citation omitted).

Here, Defendant has provided a good faith explanation for why it failed to timely respond. Defendant was served on December 10, 2024. *See* Dkt. 1; Dkt. 4. That same day, Mary Boston, Reagan Gold's Chief Marketing Officer, emailed Plaintiff's counsel expressing her "hope to resolve the situation quickly." Dkt. 16-1 at 1. She explained that Reagan Gold is "a small family run company with less than 10 people in sales" and would "like to reach an agreement with the least amount of legal fees because [it does not] have a company attorney and [does not] intend on going to court." *Id.*

After Plaintiff's counsel informed Defendant that they were proceeding with a class action suit, Defendant sought to retain counsel that would help settle the matter outside of litigation. Dkt. 12 at 6–7; *see* Dkt. 16-2 at 5 (email from Foster Garvey PC to Plaintiff's counsel seeking to discuss the case); Dkt. 16-3 (email from Carlson & Messer LLP seeking to discuss the case). Defendant asserts that once it was informed that Plaintiff was unwilling to negotiate a settlement, it promptly began searching for legal representation. Dkt. 12 at 7. After meeting with several attorneys—Jeff Scott at Greenberg Traurig, Thomas Goodwin of Ellis George LLP, Raymond Kim of Ray Kim Law, and David Rose of PNW Family Law—Defendant retained David Rose who made an appearance on February 28, 2025. *Id.*; *see also* Dkt. 7.

The communications attached to Plaintiff's response brief show that Defendant sought to settle the matter outside of court, but once it became clear that settlement was not viable, Defendant sought legal representation. *See* Dkt. 16-2; Dkt. 16-3. Courts generally find conduct culpable when it involved actions that are "calculated to help them retain property in their possession, and avoid liability by staying out of court[.]" *Mesle*, 615 F.3d at 1094 (citation omitted). Here, the evidence does not show that Defendant was trying to evade liability by "taking advantage" of Plaintiff or "manipulat[ing] the legal process." *See id.* at 1093 (citation omitted); *PacificSource Health Plans v. Atl. Specialty Ins. Co.*, No. 22-35666, 2023 WL 4946604, at *3 (9th Cir. Aug. 3, 2023) ("Generally, conduct is culpable and inexcusable only when the defendant's active misconduct led to the default.") (citing cases). Instead, the record suggests Defendant was trying in good faith to resolve the matter without litigation.

Still, Plaintiff contends that the fact that "Defendant waited until the day after they had to participate in discovery to actually file this motion . . . [is] gamesmanship [that] should not be rewarded." Dkt. 16 at 4–5. Plaintiff asserts that other "federal courts have arrived at the same conclusion in similar situations." *Id.* at 5 (citing *Jones v. James Trading Co. Ltd.*, No.

CV1902674MWFJEMX, 2021 WL 4434333, at *2 (C.D. Cal. Aug. 3, 2021), *aff'd*, No. 21-55896, 2023 WL 3882957 (9th Cir. June 8, 2023)). For example, in *Jones*, after defending the action for over a year, the defendants terminated their counsel and then waited eight months before seeking new counsel and informing the court that they had lost contact with their original attorney. 2021 WL 4434333, at *3. The district court found that "[u]nder these circumstances, perhaps Defendants could be excused for waiting two months before searching for new counsel. But Defendants['] failure to retain new counsel after having no contact with their attorney for *eight months* constitutes willful failure to defend this action." *Id.* (emphasis in original).

Here, unlike in *Jones*, Defendant's counsel made an appearance within one month of Plaintiff moving for default. *See* Dkt. 7. Defendant has also offered a credible, good faith explanation for its delay—seeking to negotiate a settlement. *See* Dkt. 16-1; Dkt. 16-2; Dkt. 16-3. Settlement discussions are part of the litigation process, and the communications show that Defendant was not passively waiting but working to respond to the complaint. *See id.* Moreover, Plaintiff has presented no evidence that suggests that Defendant acted willfully to avoid liability. *See Mesle*, 615 F.3d at 1094. The Court thus finds that Defendant's conduct was not culpable, and this factor favors setting aside the entry of default.

  2. *Meritorious Defense*

Next, to meet the meritorious defense standard, a Defendant "must present specific facts that would constitute a defense." *Id.* This burden is "not extraordinarily heavy" and requires only that "Defendant allege sufficient facts, that if true, would constitute a defense." *Id.* (citation omitted).

The TCPA "prohibits certain unsolicited telephone calls" such as "telephone solicitations sent to residential telephone subscribers who have registered their phone numbers on the national do-not-call registry." *Chennette v. Porch.com, Inc.*, 50 F.4th 1217, 1219–20 (9th Cir. 2022)

(citing 47 U.S.C. § 227(c)). Telemarketing is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012) (citing 47 C.F.R. § 64.1200(f)(10) (2011) (as amended 2012)). Affirmative defenses may be raised if: (1) "the call was placed in error and certain procedural requirements were met"; (2) "the telemarketer has obtained the subscriber's prior express invitation or permission"; or (3) "the telemarketer has a personal relationship with the recipient." *Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 989 (9th Cir. 2023) (citation modified).

Defendant offers several potentially meritorious defenses. First, Defendant argues that it has "adhered to the TCPA regulations by refraining from sending solicitation messages" and instead "provided courtesy messages to the general public, which contain informative, yet publicly available, communications related to [G]old." Dkt. 12 at 8. Defendant maintains that "none of the messages sent to any member of the Class, including Mr. Hoffman, requested or encouraged the recipient to purchase gold from Reagan[.]" *Id.* Rather, the messages contained "information to individuals, enabling them to make better investment choices." *Id.*

Second, Defendant argues that it is entitled to affirmative defenses—having reasonable practices and procedures and established business relationships with the recipients. *Id.* at 9. Defendant asserts that it complied with procedural requirements, *see* C.F.R. § 64.1200(c)(1)–(2), by never placing calls or sending text messages between 9PM and 8AM and not contacting individuals on the national do-not-call registry who had not previously opted-in to receive Reagan Gold's communications. *Id.* at 10. Defendant notes that parties such as Hoffman who opted in to receive the communications would continue to receive calls or texts. *Id.*; Dkt. 20 at 2. Defendant also asserts that its "routine business practices meet the FCC's required standards because they have established and implemented a written policy, which . . . explicitly directs

personnel not to contact individuals who request not to be contacted or those who are on Reagan's internal do-not-call registry." Dkt. 12 at 10. Finally, Defendant states that it uses the regularly updated version of the national do-not-call registry to ensure its compliance with TCPA regulations. *Id.*

Defendants next asserts that an "established business relationship" is defined as "a prior or existing relationship formed by a voluntary two-way communication between a person or entity and a business or residential subscriber, based on an inquiry, application, purchase or transaction by the business or residential subscriber regarding products or services offered by such person or entity." *Id.* (citing C.F.R. § 64.1200(f)(5)). And it alleges that "Reagan's relationship with Mr. Hoffman and other individuals was initiated through their expressed interest in receiving a gold guide, which they requested to learn more about gold and silver as investment options for their savings and retirement." *Id.* at 11. Since the nature of the communications was "strictly information and responsive" rather than being "unsolicited advertisement," Defendant argues it complied with the TCPA. *Id.*

Plaintiffs dispute that Hoffman provided consent for the calls at issue. Dkt. 19 at 5. At this early stage, however, the Court need not resolve the underlying factual disputes. *See Mesle*, 615 F.3d at 1094 ("All that is necessary to satisfy the 'meritorious defense' requirement is to allege sufficient facts that, if true, would constitute a defense[.]") (citation omitted). Defendants have asserted facts that challenge Plaintiffs' prima facie claim for a TCPA violation and raise affirmative defenses that if true, establish "some possibility that the outcome of the suit after a full trial will be contrary to the result achieved by the default." *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 513 (9th Cir. 1986) (citation omitted). Because Defendant may have a meritorious defense to Plaintiff's claims, this factor supports setting aside default.

ORDER GRANTING MOTION TO SET ASIDE DEFAULT - 7

### 3. Prejudice

Finally, the Court considers "whether reopening the default judgment would prejudice the other party." *Aguilar*, 782 F.3d at 1105. "To be prejudicial, the setting aside of a judgment must result in greater harm than simply delaying resolution of the case." *TCI Grp. Life Ins. Plan v. Knoebber*, 244 F.3d 691, 701 (9th Cir. 2001), *as amended on denial of reh'g and reh'g en banc* (May 9, 2001) (citing cases). The "delay must result in tangible harm such as loss of evidence, increased difficulties of discovery, or greater opportunity for fraud or collusion." *Id.* (citation omitted).

Setting aside the entry of default will not prejudice Plaintiff because the delay will not hinder Plaintiff's ability to pursue his claims or impose costs that are greater than those inherent in litigating this case. *See TCI Grp. Life Ins. Plan*, 244 F.3d at 701. Furthermore, the delay was not long. Defendant filed its motion to set aside default less than one month after Plaintiff responded to the Court's order to show cause why the case should not be dismissed for failure to prosecute. *See* Dkt. 12; Dkt. 9; Dkt. 8. And as noted above, Defendant's attorney made an appearance on February 28, 2025, shortly after Plaintiff moved for default. *See* Dkt. 7. There has been minimal activity in this case apart from moving for default, and Plaintiff's filings do not indicate he would be prejudiced if required to litigate his claims on the merits. *See TCI Grp. Life Ins. Plan*, 244 F.3d at 701 (merely "being forced to litigate on the merits" is not prejudicial). Accordingly, this final factor favors vacating the entry of default.

## V.    CONCLUSION

For the reasons explained above, Defendant has shown good cause to vacate default under the *Falk* factors. The Court thus GRANTS Defendant's motion to set aside default (Dkt. 12). The entry of default is VACATED, and Defendant is ORDERED to file a responsive pleading no later than July 7, 2025.

Dated this 20th day of June, 2025.

                                                Tiffany M. Cartwright
                                                United States District Judge